# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| MALIK SHABAZZ | * | CIVIL ACTION NO.  18-0124<br>Section P |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| KEVIN WYLES, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to

28 U.S.C. § 636(b)(1)(B), is a motion to dismiss for failure to state a claim upon which relief can

be granted [doc. # 22], Fed.R.Civ.P. 12(b)(6), filed by defendants, Warden Kevin Wyles, Butch

Hatten, Michael Crain, Teresa Corley, Regina Beckley (apparently incorrectly named as "Regina

Beckly"), and Sgt. Carroll (apparently incorrectly named as "Sgt. Caroll").  For reasons stated

below, it is recommended that the motion be GRANTED, and that plaintiff's claims against said

defendants, plus Stacy Kaderka, Gabel Morton, and Clayton Spires be DISMISSED, without

prejudice on the merits, but DISMISSED with prejudice for purposes of proceeding in forma

pauperis pursuant to 28 U.S.C. § 1915.

## Procedural History

On January 31, 2018, Malik Shabazz, an inmate at the Caldwell Correctional Center

("CCC"), filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against various

officers at the CCC, including:  Kevin Wyles, Stacey Kaderka, Butch Hatten, Michael Crain,

Teresa Corley, Gabel Morton, Regina Beckly, Clayton Spires, and Sgt. Carroll.  Shabazz alleges

that on February 24, 2017, defendants Beckly, Morton, and Spires, entered his housing unit, and

Beckly sprayed an unknown chemical agent into his face and eyes, causing "burning and injury." Plaintiff then attempted to "block the spray [and] turn and run away but was tackled by Defendant Spires . . . ." While he was "face down on [the] ground with both hands behind his back, Defendant Morton shot [him] in his back twice with his Taser-gun . . . leaving two permanent scars . . . ."

Defendant Spires then handcuffed plaintiff, cutting off circulation to his hands, resulting in numbness "to this day," and causing permanent scars. Defendants escorted plaintiff to an off-camera bathroom, and defendant Beckly sprayed him with the chemical agent again. Defendants Beckly, Morton, and Spires also kicked him in the back and ribs.

Defendants abandoned plaintiff for at least one hour while his face and eyes were burning and bleeding. Defendants then allowed plaintiff to wash his face with water only, which reactivated and intensified the burning. Defendants placed plaintiff in administrative segregation and ordered him to take off all of his clothing. He was given only one pair of paper shorts to wear and was "compelled to remain in the cell under frigid temperatures believed to be below 60 [degrees] . . . from Friday (2/24/17) until Sunday night (2/28/17) . . ."

Plaintiff subsequently was transferred to a suicide cell, where he remained in administrative segregation from February 24, 2017, to March 28, 2017, without ever receiving a disciplinary report, a hearing, or notice of a rule violation. While in the suicide cell, plaintiff could not send or receive mail, use a telephone, or contact anyone.

On February 27, 2017, plaintiff requested medical attention for pain to his head, back, wrist, and hand, but defendant Corley refused to administer aid. "[A]s of this day, Corley fail[ed] to respond to all medical requests regarding the pain" from the initial injuries inflicted on

February 24, 2017.  Plaintiff continues to experience migraine headaches, back pain, and numbness from nerve damage.

Plaintiff also alleges that Beckly gave all of his personal property to other inmates, that defendant Caroll strip searched him in the presence of female officers, and that, while searching him, Caroll made sexually harassing comments.

Plaintiff requested a temporary restraining order and preliminary injunction to enjoin defendants from refusing medical care, preventing access to the courts, and destroying video footage.  He also prayed for $20 million in compensatory damages and $15,000 in punitive damages.  Finally, he moved to certify a class of similarly situated inmates with claims common to his.

On April 9, 2018, the court completed its initial screening pursuant to 28 U.S.C. §§ 1915 and 1915A, and ordered service on Kevin Wyles, Stacey Kaderka, Butch Hatten, Michael Crain, Teresa Corley, Gabel Morton, Regina Beckly, Clayton Spires, and Sgt. Caroll.  (April 9, 2018, Mem. Order [doc. # 11]).  The undersigned also issued a contemporaneous report recommending that plaintiff's motions for temporary restraining order and for class certification be denied. (Report and Recommendation [doc. # 10]).  On April 24, 2018, the District Court adopted the report and recommendation and denied the motions.  *See* Judgment [doc. # 14].

Meanwhile, the U.S. Marshal filed returns of service indicating that on May 25, 2018, defendants, Crain, Wyles, Corley, "Beckley," Carroll, Kaderka, and Hatten had been served with summonses and the complaint.  [doc. # 25].  Summons was returned "un-executed," as to defendant Clayton Spires.  [doc. # 26].

On June 13, 2018, defendants Warden Kevin Wyles, Butch Hatten, Michael Crain,

3

Teresa Corley, Regina Beckley, and Sgt. Carroll, filed the instant motion to dismiss for failure to state a claim upon which relief can be granted on the basis that plaintiff failed to exhaust administrative remedies prior to suit.

On June 25, 2018, plaintiff filed an objection to defendants' motion to dismiss. [doc. # 24]. On July 2, 2018, defendants filed a reply brief. [doc. # 27]. Accordingly, the matter is ripe.

**Analysis**

## I.      Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.

*Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*.  (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*.  Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).

## II.      Law

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*). **An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement**. *Id*. (emphasis added). Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). Exhaustion also applies to claims under RLUIPA. *See Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 790 (5th Cir.2012), as corrected (Feb. 20, 2013). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. 2003).

A prisoner is required to exhaust all steps of a grievance process even if the prison fails

to respond to his grievances at an earlier step in the process. *Wilson v. Epps*, 776 F.3d 296, 302

(5th Cir.2015) (plaintiff failed to proceed through all three steps of the grievance process;

instead, he completed only the first step, and then filed suit when those grievances were not

responded to in a timely fashion); *Hicks v. Lingle*, 370 F. Appx. 497, 499 (5th Cir. 2010); *Ates v.*

*St. Tammany Parish*, Civ. Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014).

Moreover, to the extent that language on the form or policy regarding subsequent step review is

phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all

"available" steps. *Ates, supra* (and cases cited therein); *see also Hicks, supra* (inmate required to

proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied

with first step response); *Wilson, supra* (subsequent steps of grievance process remained

unexhausted even though phrased permissively as "may request," and "may appeal").  In short,

the courts "will not read futility or other exceptions into statutory exhaustion requirements where

Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825,

n.6 (2001).

The Supreme Court recently explained that "[u]nder § 1997e(a), the exhaustion

requirement hinges on the 'availab[ility]' of administrative remedies:  An inmate, that is, must

exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, ___ U.S. ___,

136 S.Ct. 1850, 1858 (2016).  The Court then looked to dictionary definitions of "available," to

conclude that an inmate is "required to exhaust those, but only those, grievance procedures that

are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (citations omitted).[1]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable. *Id*. First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates. *Id*. (citation omitted).[2] Second, exhaustion is not required where an administrative scheme is so opaque that it is unknowable in the sense that no ordinary prisoner can discern its requirements. *Id*. Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.[3]

---

[1]  Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 Fed. Appx. 187, 190 (5th Cir.2015).

[2]  The Supreme Court provided some examples,
[s]uppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth* 's words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief."  When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.
*Ross, supra* (internal citations omitted).

[3]  "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir.2015). Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies. *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir.2003).

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id.* "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).

III.    **Discussion**

Plaintiff alleged in his complaint that he submitted complaints via the prison grievance process, which defendants either 1) ignored, or 2) "accepted" after screening, assigned a grievance number, but then never contested, cured, or answered. (Compl., pg. 9). Plaintiff attached eight grievances to his complaint to support his assertions. (Compl., Exhs. P1-8). Each of the grievance forms completed by plaintiff specified that "[t]he 'First Respondent' will respond to you within 15 days . . . If you do not hear from the 'First Respondent' within 20 days you may file a Request for a Warden's Review within the following 5 days . . ." *Id.* Alternatively, if the inmate received a response to the grievance, then, "if [the inmate] wish[es] to appeal to the Warden [the inmate] must do so within 5 days of receiving the Response to the Grievance." *Id.*

Plaintiff, however, apparently never requested a warden's review or appealed to the warden as to any of his grievances. Rather, he took the position that, by failing to respond to his grievances, defendants' "defaulted" on the grievance process. (Compl., pg. 11). In other words, plaintiff's verified amended complaint, and the attachments thereto, confirm that he was aware of the multi-step grievance process, but that he failed to exhaust the second step of available administrative remedies prior to filing suit.

In his response to defendant's motion, plaintiff again did not argue that he exhausted the second step of the grievance process. Rather, he asserted that because the subsequent step of CCC's grievance policy is couched in permissive terms, he was not *required* to exhaust that step. Alternatively, he posited that even if the subsequent step *was* mandatory, the permissive nature of the terms used (i.e., "may request" and "wish to appeal") misled him into believing that further exhaustion was optional. In support of his argument, plaintiff cogently invoked state law principles on contracts, fraud, and misrepresentation. He further emphasized that the warden was fully aware of his grievances.

The court is not unsympathetic to plaintiff's arguments. Moreover, they appear to parallel one or more of the circumstances identified by the Supreme Court in *Ross* that could suffice to render the administrative remedies "unavailable." Nonetheless, the arguments appear to be foreclosed by earlier Fifth Circuit decisions that require subsequent step exhaustion, even when no response is received at an earlier step, and when further administrative review is disguised as discretionary. *See Hicks, supra* and *Wilson, supra*. Moreover, manuals, policies, and grievance procedures do not confer contractual rights. *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 430 (5th Cir.1996) (discussed in the context of the "employment at will" doctrine).

10

In short, when read in conjunction with existing circuit law, the exhaustion requirements

for the CCC's grievance policy are not opaque or misleading.  Stated differently, plaintiff's

ignorance of the law does not relieve him of his obligation to comply with pertinent procedural

requirements.  *Plaisance, supra*.  Insofar as plaintiff contended that the grievance procedure was

unavailable because officers consistently were unable or unwilling to provide relief to aggrieved

inmates, he did not allege *facts* to support a finding that officers *never* accorded relief.

Plaintiff further asserted that defendants are foreclosed from raising exhaustion as a

defense because the court completed its initial screening pursuant to 28 U.S.C.§§ 1915 and

1915A, and ordered service on the defendants.  In other words, the court already has determined

that plaintiff exhausted available administrative remedies.  However, ever since the Supreme

Court issued its decision in *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 922–23, (2007), this

and other courts have been hesitant to dismiss a case sua sponte for failure to exhaust

administrative remedies.  *See Thomas v. Goodwin*, No. 16-1593, 2018 WL 1613794, at \*2 (W.D.

La. Mar. 6, 2018), R&R adopted, 2018 WL 1612849 (W.D. La. Apr. 3, 2018) (court no longer

screens the complaints sua sponte for pre-suit exhaustion).

Moreover, the service order issued in this case ordered defendants to address whether

plaintiff "should be required to exhaust administrative remedies, and, if so, whether he has

exhausted his administrative remedies prior to filing herein.  If Defendants contend that Plaintiff

failed to exhaust administrative remedies, [they are] authorized to raise this issue via summary

judgment motion as a threshold matter."  (April 9, 2018, Mem. Order [doc. # 11]).  Here, in lieu

of a motion for summary judgment, defendants opted to file a Rule 12(b)(6) motion.  Plaintiff

has not shown that the outcome would be any different if defendants had utilized the former

procedural device.  Indeed, plaintiff did not seek leave to amend his complaint to assert

additional facts, and did not identify any areas of discovery that he needed to undertake in order

to respond to the motion.  *See* Fed.R.Civ.P. 56(d).

## IV.   Remedy for Failure to Exhaust

The plain language of the PLRA precludes any further action on plaintiff's claims until

he has fully exhausted the administrative remedy procedure.[4]  Dismissal is the remedy, and

although it is typically without prejudice,[5] the court is authorized to dismiss plaintiff's complaint

with prejudice to his right to re-file it, in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative
> remedies as required, [plaintiff] sought relief to which he was not entitled-that is,
> federal court intervention in prison affairs prior to the prison having had the
> opportunity to address the complaint within its grievance procedures. We
> therefore affirm the district court's order dismissing [plaintiff]'s action with
> prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other
grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here.  Accordingly, if plaintiff exhausts his administrative

remedies with respect to the claims raised herein, he may present these § 1983 claims again, but

may not proceed in forma pauperis to do so.[6]

---

[4]  *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (overruled by implication
on other grounds by *Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 920 (2007) (§ 1997e(a)
"plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit,
rather than while the action is pending . . . [t]o hold otherwise would encourage premature filing
by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to
provide the federal courts some relief from frivolous prisoner litigation.").

[5]  *See e.g., Plaisance v. Cain, supra*; *Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th
Cir. 2009).

[6]  Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance
with an agency's deadlines and other critical procedural rules. *Woodford, supra*.  At this point,
plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative

IV.     **Stacy Kaderka, Gabel Morton, and Clayton Spires**

Defendants Stacy Kaderka, Gabel Morton, and Clayton Spires did not join in the present

motion – no doubt at least as to the latter two defendants because there is no indication that they

were served with the complaint.  Nonetheless, all three remaining defendants are entitled to

dismissal on the same basis as the moving defendants.  *Lewis v. Lynn*, 236 F.3d 766, 768, 236

F.3d 766 (5th Cir. 2001) (where defending party establishes that plaintiff has no cause of action,

the defense generally inures to the benefit of a non-appearing co-defendant).[7]

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon

which relief can be granted [doc. # 22] filed by defendants Warden Kevin Wyles, Butch Hatten,

Michael Crain, Teresa Corley, Regina Beckley (incorrectly named as "Regina Beckly"), and Sgt.

Carroll (incorrectly named as "Sgt. Caroll") be GRANTED, and that plaintiff's claims against

said defendants, plus Stacy Kaderka, Gabel Morton, and Clayton Spires be DISMISSED,

without prejudice, on the merits, but DISMISSED with prejudice for purposes of proceeding in

forma pauperis pursuant to 28 U.S.C. § 1915.  Fed.R.Civ.P. 12(b)(6).

In light of the recommended dismissal of plaintiff's suit,

IT IS FURTHER RECOMMENDED that plaintiff's motion for preliminary injunction

remedies.

[7] The instant report and recommendation provides adequate notice to the parties.
*McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

[doc. # 1] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 12th day of July 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE